UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ELLIOT H. STOKAR, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AUDI OF AMERICA, LLC., and AUDI AG,<br><br>    Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## TABLE OF CONTENTS

**Page**

I.  NATURE OF THE ACTION ..........................................................................................1

II. JURISDICTION & VENUE...........................................................................................2

III. PARTIES .......................................................................................................................3

IV. FACTUAL ALLEGATIONS .........................................................................................4

V.  FRAUDULENT CONCEALMENT ALLEGATIONS ...................................................6

VI. TOLLING OF STATUTE OF LIMITATIONS ............................................................8

    A.  Fraudulent Concealment Tolling .........................................................................8

    B.  Estoppel.................................................................................................................8

    C.  Discovery Rule......................................................................................................8

VII. CLASS ACTION ALLEGATIONS ..............................................................................9

FIRST CLAIM......................................................................................................................18

SECOND CLAIM..................................................................................................................21

THIRD CLAIM .....................................................................................................................24

PRAYER FOR RELIEF ........................................................................................................33

DEMAND FOR JURY TRIAL .............................................................................................33

Plaintiff Elliot H. Stokar ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants Audi AG and Audi of America, LLC (unless otherwise indicated, both Defendants are collectively referred to as "Audi"). All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.  NATURE OF THE ACTION

1.      Plaintiff purchased an Audi, model A8, in or around March 2013. According to Audi's representations contained in the "Monroney Sticker" on the vehicle Plaintiff purchased, Plaintiff's vehicle emitted 418 grams of carbon dioxide per mile and had estimated fuel efficiency of 18 miles per gallon in city driving and 28 miles per gallon on the highway. Upon information and belief, these representations were false. Unbeknownst to Plaintiff, the vehicle he purchased was, upon information and belief, surreptitiously equipped with a "defeat device" designed to limit emissions and increase fuel efficiency when the vehicle was being subjected to regulatory emissions and fuel efficiency testing, but not during regular use. As a result, the actual emissions and/or fuel efficiency of Plaintiff's vehicle are materially different from the representations set forth on the Monroney Sticker and in advertisements and marketing representations made by Audi to consumers. Upon information and belief, at least Audi models equipped with the "AL 551" transmission employ this defeat device. But testing may reveal additional Audi gasoline engine models have been rigged to cheat emissions and fuel efficiency testing.

- 1 -

2.      Plaintiff brings this proposed class action for damages on behalf of himself and all other persons and entities nationwide who purchased or leased an Audi vehicle equipped with the defeat device, including but not limited to A6, A8, Q5 and Q7 models with 3.0 liter gasoline engines and automatic transmissions, and perhaps others  (collectively, the "Affected Vehicles").

3.      Plaintiff and members of the class all suffered damages as a result of Audi's misrepresentations and omissions regarding the defeat device.  Plaintiff and class members overpaid to purchase vehicles incapable of providing the balance of performance, efficiency, and cleanliness that Audi represented them to offer.  Plaintiff and the class members have also suffered diminution of vehicle value now that the existence of the defeat devices has been revealed publicly.  Accordingly, Plaintiff and similarly situated owners and lessees of the Affected Vehicles are entitled to compensation for their losses, including losses related to increased fuel expenditures.

## II.      JURISDICTION & VENUE

4.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      The Court has personal jurisdiction over Audi AG and Audi America because the alleged wrongdoing occurred in Illinois and because Audi AG and Audi America have sufficient minimum contacts with Illinois and has otherwise intentionally availed itself of the markets in Illinois.

6.      Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (b)-(c) and 1441(a), because Audi AG and Audi America

- 2 -

are corporate entities that are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because their contacts with this District are sufficient to subject it to personal jurisdiction. Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

### III. PARTIES

7. Plaintiff Elliot H. Stokar is an adult male Illinois citizen residing in Chicago, Cook County, Illinois. On or about March 30, 2013, Plaintiff purchased a 2013 Audi A8 3.0T Quattro tiptronic, Model 4H254A. Plaintiff purchased his vehicle at Audi Orland Park, located at 8021 W. 159th Street Tinley Park, IL 60477, which, upon information and belief, is an Audi dealership owned and operated by International Imports, LLC, located at 8031 W. 159th Street Tinley Park, IL 60477. Plaintiff paid for the car, in full, at the time of purchase. Plaintiff's purchase occurred within this judicial district.

8. Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engaged in business, including the advertising, marketing and sale of Audi automobiles, in all 50 states.

9. Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent company of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly-owned subsidiary of VW AG. Audi AG designs, develops, manufacturers, and sells luxury automobiles. According to Audi AG, the Audi Group sold 1.8 million cars worldwide in 2015, including more than 200,000 vehicles in the United States, with sales revenues in 2015 totaling €58.5 billion (approximately $64.34 billion).

- 3 -

## IV. FACTUAL ALLEGATIONS

10.     It has been widely publicized that Audi and its parent Volkswagen, for years, engaged in an extensive scheme to misrepresent the emissions of their "clean diesel" vehicles by equipping them with a defeat device.

11.     The defeat device at issue in that case used a multi-faceted algorithm to detect when vehicles were being operated on dynamometers, such as is used in smog testing facilities and by the EPA, CARB, and state regulators when determining whether vehicles comply with emissions standards.  When the diesel defeat device detected the car was undergoing emissions testing, it would engage full emissions controls, which allowed the diesel vehicles to pass stringent standards for Oxides of Nitrogen (NOx) emissions.  But during on road driving, these same cars emitted 10-40 times the legal limits for NOx.

12.     It has been recently discovered and widely reported that Audi equipped many of its *gasoline* vehicles with an entirely different defeat device to falsify and misrepresent carbon dioxide emissions and, on information and belief, fuel efficiency.  According to reports, this defeat device is particularly nefarious because it does not directly affect emissions controls, so it is very difficult to detect.  Instead, when it detects that an equipped car is in a testing bay, it changes the shift points of the automatic transmission so that the vehicle operates in a "low rev" mode, that is, it shifts into the next higher gear sooner than it otherwise would.  This modified shifting scheme effectively falsifies the vehicle's emissions and fuel efficiency results by keeping the engine RPM artificially low, thereby using less fuel and emitting less carbon dioxide.[1]  When the vehicle is not in a testing bay, the defeat device deactivates and allows the

---

[1] *CARB Finds New Audi Defect Device, German Paper Digs Up Smoking Gun Document*, November 6, 2016, http://www.forbes.com/sites/bertelschmitt/2016/11/06/carb-finds-new-audi-defeat-device-german-paper-digs-up-smoking-gun-document/#6ae523791ce8.

vehicle to operate at higher revolutions per minute such that the vehicle has more power and acceleration, but consumes more fuel and emits more carbon dioxide.[2]

13.     Additional reports indicate that Audi executives were aware of this defeat device and instructed that it be utilized as much as possible to mispresent the performance of Audi vehicles.[3]  According to these reports, Audi installed this defeat device in models equipped with the AL 551 transmission, including A6, A8, Q5 and others, as late as May 2016, eight months after public disclosure of the defeat device utilized by Audi and its parent Volkswagen on "clean diesel" vehicles in September 2015.[4]

14.     Federal law requires that the label affixed to every new vehicle sold in the United States must contain, among other requirements, a statement of the estimated fuel efficiency and number of grams of carbon dioxide emitted per mile driven by the vehicle.   49 CFR 575.401(e)(8)(v).   Consistent with this requirement, the "Monroney Sticker" on the vehicle purchased by Plaintiff included a representation that the vehicle emits 418 grams of carbon dioxide per mile and has a combined fuel efficiency figure of 21 miles per gallon, 18 miles per

---

[2] *VW Recovery Dealt Blow by Poetsch Probe*, *Audi Cheating Report*, November 7, 2016, https://www.bloomberg.com/news/articles/2016-11-07/vw-recovery-dealt-blow-by-poetsch-probe-audi-cheating-report.

[3] "Volkswagen and Audi management discussed the CO2 defeat-device software in detail during a "Summer Drive" event in South Africa in the second half of February 2013, according to one person familiar with the situation and excerpts from the minutes of the meeting, which were reviewed by THE WALL STREET JOURNAL.  According to the minutes, Axel Eiser, the head of Audi's powertrain division, said:  "the shifting program needs to be configured so that it runs at 100% on the treadmill but only 0.01% with the customer."  *New Discovery Broadens VW Emissions-Cheating Crisis*, November  6, 2016, http://www.wsj.com/articles/volkswagen-probe-in-germany-extended-to-chairman-1478429066.

[4] *CARB Finds New Audi Defect Device, German Paper Digs Up Smoking Gun Document*, November 6, 2016, http://www.forbes.com/sites/bertelschmitt/2016/11/06/carb-finds-new-audi-defeat-device-german-paper-digs-up-smoking-gun-document/#6ae523791ce8

010642-10  914392 V1

gallon city and 28 miles per gallon highway. Upon information and belief, as a result of Defendants' use of the defeat device, these representations were false.

15. Plaintiff has suffered damages as a result of his purchase of an Affected Vehicle, including but not limited to (i) overpayment for a vehicle that are incapable of performing as represented, (ii) future additional fuel costs, (iii) loss of performance from future repairs, and (iv) diminution of vehicle value.

### V. FRAUDULENT CONCEALMENT ALLEGATIONS

16. Plaintiff makes the following specific fraud allegations with as much specificity as possible at this point in the litigation:

a. **Who**: Audi actively concealed the defeat device present in the Affected Vehicles from Plaintiff and the class members when Audi continued to manufacture, distribute, sell and lease the Affected Vehicles. Plaintiff is unaware of and therefore cannot specifically identify the true names and identities of specific Audi officials responsible for such decisions, except that Plaintiff can identify Axel Eiser, the head of Audi's powertrain division, as having knowledge and intent that the defeat device be used in Affected Vehicles, in addition to other executives at the "Summer Drive" event in South Africa in the second half of February 2013.

b. **What**: Audi and at least the executives at the "Summer Drive" event in South Africa in the second half of February 2013, including Axel Eiser, knew, or were reckless or negligent in not knowing, that the Affected Vehicles contain the defeat device, as alleged herein. Audi concealed the defeat device from Plaintiff and the class members he seeks to represent.

c. **When**: Audi concealed material information regarding the defeat device in the Affected Vehicles sold and/or leased from at least February 2013, but in likelihood for many years before then; namely that the reported carbon dioxide emissions were false, Audi had

not disclosed the truth about the defeat device in Affected Vehicles to anyone outside of Audi, nor had Audi taken any action to inform consumers about the true nature of the Affected Vehicles.

        d.      **Where**:  Audi concealed material information regarding the true nature of the Affected Vehicles in connection with every sale and lease transaction involving Affected Vehicles at least in the United States, if not worldwide.  Plaintiff is aware of no communication, document, or other interaction with anyone outside of Audi before the date of filing of this Complaint, in which Audi disclosed the true nature of the defeat device in each and every Affected Vehicle.  The existence of the defeat device in the Affected Vehicles was not disclosed in Audi's marketing, warranties, documentation, website, or any communication with Plaintiff and vehicle owners.

        e.      **How**:  Audi concealed material information regarding the defeat device at all times prior to the date of this Complaint, including that the existence of the defeat device manipulates the performance of the Affected Vehicles.  Audi actively concealed the truth about the existence and nature of the defeat device from Plaintiff and class members, even though Audi knew that information regarding the defeat device would be important to a reasonable consumer.  Audi falsely reported the $CO_2$ emissions levels and fuel consumption on the Monroney labels affixed to its vehicles and its sales and marketing materials distributed and viewed by consumers and regulators.

        f.      **Why**:  Audi concealed material information about the defeat device in Affected Vehicles for the purpose of inducing Plaintiff and class members to continue to and repeatedly purchase and/or lease Affected Vehicles, rather than purchasing and/or leasing competing vehicles.  If Audi had disclosed the truth about the defeat device, or had not used the

defeat devices, thus rendering the cars either less powerful or less efficient and less environmental friendly—assuming they could be legally sold at all—then Plaintiff would not have purchased the Affected Vehicles or he would have paid less.

## VI.    TOLLING OF STATUTE OF LIMITATIONS

### A.    Fraudulent Concealment Tolling

17.    Upon information and belief, prior to the date of this Complaint, and at least as early as February 2013, if not earlier, Audi knew of the defeat device in the Affected Vehicles, but continued to distribute, sell, and/or lease the Affected Vehicles to Plaintiff and the class members.  In doing so, Audi concealed from or failed to notify Plaintiff and the class members about the true nature of the Affected Vehicles.  Any applicable statute of limitations has therefore been tolled by Audi's knowledge, active concealment, and denial of the facts alleged herein.

### B.    Estoppel

18.    Audi was under a continuous duty to disclose to Plaintiff and the class members the existence of the defeat device, which substantially affects the true character, quality, performance, and nature of the Affected Vehicles.  Audi actively concealed the true character, quality, performance, and nature of the defeat device in the Affected Vehicles, and Plaintiff and the class members reasonably relied upon Audi's knowing and active concealment of these facts. Audi is accordingly estopped from relying on any statute of limitations in defense of this action. For these same reasons, Audi is estopped from relying upon any warranty mileage and age limitations in defense of this action.

### C.    Discovery Rule

19.    The claims for relief alleged herein did not accrue until Plaintiff and the class members discovered that the Affected Vehicles contained the defeat device.

20.     Plaintiffs and the class members had no realistic ability to identify the defeat device until—at the earliest—November 7, 2016, when published reports surfaced for the first time disclosing the existence of the defeat device.

21.     Despite their exercise of due diligence, Plaintiff and the class members were not reasonably able to discover the defeat device until after they purchased or leased the Affected Vehicles.  Accordingly, their claims for relief did not accrue until they discovered that the defeat device caused the Affected Vehicles to fail required emissions standards.

## VII.    CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on behalf of himself and all others similarly situated under Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following class and subclasses (collectively, the "Classes"):

### The Nationwide Class

All persons or entitles in the United States who are current or former owners and/or lessees of an Affected Vehicle.[5]

### The Alabama Subclass

All persons or entitles in the state of Alabama who are current or former owners and/or lessees of an Affected Vehicle.

### The Alaska Subclass

All persons or entitles in the state of Alaska who are current or former owners and/or lessees of an Affected Vehicle.

### The Arizona Subclass

All persons or entitles in the state of Arizona who are current or former owners and/or lessees of an Affected Vehicle.

---

[5] At present, on information and belief, Affected Vehicles include Audi A6, A8, Q5 and Q7 vehicles equipped with Audi's 3.0 liter gasoline engine and automatic transmission.  Discovery and further investigation may reveal additional models of vehicles to be included in the definition of Affected Vehicles.

### The Arkansas Subclass

All persons or entitles in the state of Arkansas who are current or former owners and/or lessees of an Affected Vehicle.

### The California Subclass

All persons or entitles in the state of California who are current or former owners and/or lessees of an Affected Vehicle.

### The Colorado Subclass

All persons or entitles in the state of Colorado who are current or former owners and/or lessees of an Affected Vehicle.

### The Connecticut Subclass

All persons or entitles in the state of Connecticut who are current or former owners and/or lessees of an Affected Vehicle.

### The Delaware Subclass

All persons or entitles in the state of Delaware who are current or former owners and/or lessees of an Affected Vehicle.

### The Florida Subclass

All persons or entitles in the state of Florida who are current or former owners and/or lessees of an Affected Vehicle.

### The Georgia Subclass

All persons or entitles in the state of Georgia who are current or former owners and/or lessees of an Affected Vehicle.

### The Hawaii Subclass

All persons or entitles in the state of Hawaii who are current or former owners and/or lessees of an Affected Vehicle.

### The Idaho Subclass

All persons or entitles in the state of Idaho who are current or former owners and/or lessees of an Affected Vehicle.

### The Illinois Subclass

All persons or entitles in the state of Illinois who are current or former owners and/or lessees of an Affected Vehicle.

- 10 -

### The Indiana Subclass

All persons or entitles in the state of Indiana who are current or former owners and/or lessees of an Affected Vehicle.

### The Iowa Subclass

All persons or entitles in the state of Iowa who are current or former owners and/or lessees of an Affected Vehicle.

### The Kansas Subclass

All persons or entitles in the state of Kansas who are current or former owners and/or lessees of an Affected Vehicle.

### The Kentucky Subclass

All persons or entitles in the state of Kentucky who are current or former owners and/or lessees of an Affected Vehicle.

### The Louisiana Subclass

All persons or entitles in the state of Louisiana who are current or former owners and/or lessees of an Affected Vehicle.

### The Maine Subclass

All persons or entitles in the state of Maine who are current or former owners and/or lessees of an Affected Vehicle.

### The Maryland Subclass

All persons or entitles in the state of Maryland who are current or former owners and/or lessees of an Affected Vehicle.

### The Massachusetts Subclass

All persons or entitles in the state of Massachusetts who are current or former owners and/or lessees of an Affected Vehicle.

### The Michigan Subclass

All persons or entitles in the state of Michigan who are current or former owners and/or lessees of an Affected Vehicle.

- 11 -

### The Minnesota Subclass

All persons or entitles in the state of Minnesota who are current or former owners and/or lessees of an Affected Vehicle.

### The Mississippi Subclass

All persons or entitles in the state of Mississippi who are current or former owners and/or lessees of an Affected Vehicle.

### The Missouri Subclass

All persons or entitles in the state of Missouri who are current or former owners and/or lessees of an Affected Vehicle.

### The Montana Subclass

All persons or entitles in the state of Montana who are current or former owners and/or lessees of an Affected Vehicle.

### The Nebraska Subclass

All persons or entitles in the state of Nebraska who are current or former owners and/or lessees of an Affected Vehicle.

### The Nevada Subclass

All persons or entitles in the state of Nevada who are current or former owners and/or lessees of an Affected Vehicle.

### The New Hampshire Subclass

All persons or entitles in the state of New Hampshire who are current or former owners and/or lessees of an Affected Vehicle.

### The New Jersey Subclass

All persons or entitles in the state of New Jersey who are current or former owners and/or lessees of an Affected Vehicle.

### The New Mexico Subclass

All persons or entitles in the state of New Mexico who are current or former owners and/or lessees of an Affected Vehicle.

010642-10 914392 V1

### The New York Subclass

All persons or entitles in the state of New York who are current or former owners and/or lessees of an Affected Vehicle.

### The North Carolina Subclass

All persons or entitles in the state of North Carolina who are current or former owners and/or lessees of an Affected Vehicle.

### The North Dakota Subclass

All persons or entitles in the state of North Dakota who are current or former owners and/or lessees of an Affected Vehicle.

### The Ohio Subclass

All persons or entitles in the state of Ohio who are current or former owners and/or lessees of an Affected Vehicle.

### The Oklahoma Subclass

All persons or entitles in the state of Oklahoma who are current or former owners and/or lessees of an Affected Vehicle.

### The Oregon Subclass

All persons or entitles in the state of Oregon who are current or former owners and/or lessees of an Affected Vehicle.

### The Pennsylvania Subclass

All persons or entitles in the state of Pennsylvania who are current or former owners and/or lessees of an Affected Vehicle.

### The Rhode Island Subclass

All persons or entitles in the state of Rhode Island who are current or former owners and/or lessees of an Affected Vehicle.

### The South Carolina Subclass

All persons or entitles in the state of South Carolina who are current or former owners and/or lessees of an Affected Vehicle.

- 13 -

### The South Dakota Subclass

All persons or entitles in the state of South Dakota who are current or former owners and/or lessees of an Affected Vehicle.

### The Tennessee Subclass

All persons or entitles in the state of Tennessee who are current or former owners and/or lessees of an Affected Vehicle.

### The Texas Subclass

All persons or entitles in the state of Texas who are current or former owners and/or lessees of an Affected Vehicle.

### The Utah Subclass

All persons or entitles in the state of Utah who are current or former owners and/or lessees of an Affected Vehicle.

### The Vermont Subclass

All persons or entitles in the state of Vermont who are current or former owners and/or lessees of an Affected Vehicle.

### The Virginia Subclass

All persons or entitles in the state of Virginia who are current or former owners and/or lessees of an Affected Vehicle.

### The Washington Subclass

All persons or entitles in the state of Washington who are current or former owners and/or lessees of an Affected Vehicle.

### The West Virginia Subclass

All persons or entitles in the state of West Virginia who are current or former owners and/or lessees of an Affected Vehicle.

### The Wisconsin Subclass

All persons or entitles in the state of Wisconsin who are current or former owners and/or lessees of an Affected Vehicle.

010642-10 914392 V1

**The Wyoming Subclass**

All persons or entitles in the state of Wyoming who are current or former owners and/or lessees of an Affected Vehicle.

**The District of Columbia Subclass**

All persons or entitles in the District of Columbia who are current or former owners and/or lessees of an Affected Vehicle.

23.     Excluded from the Class and Subclasses are (i) Audi and any entity in which Audi has a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (ii) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (iii) Class Counsel.

24.     Plaintiff seeks only damages and injunctive relief on behalf of himself and the Class Members.  Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries suffered by Plaintiff and/or the Class Members.

25.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

26.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

27.     **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Audi's books and records.  Upon information and belief, Audi sells approximately 200,000 cars each year in the United States, and has sold in excess of 100,000 cars that are presently known to be Affected Vehicles.  Moreover, upon information and

belief, Audi sold at least thousands of Affected Vehicles in the state of Illinois. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

28. **Commonality**. Common questions of law and fact exist as to all Class Members, as required by Fed. R. Civ. P. 23(a)(2), and include:

    a.    whether Audi designed, marketed, distributed, leased, and/or sold the Affected Vehicles in the United States and Illinois;

    b.    whether the Affected Vehicles that Audi designed, marketed, distributed, leased, and/or sold contained a defeat device;

    c.    whether Audi knew of the defeat device at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

    d.    whether Audi knew that its representations regarding the emissions and/or fuel efficiency of the Affected Vehicles were false at the time of designing, marketing, distributing, leasing, and/or selling the Affected Vehicles;

    e.    whether Audi's conduct violates consumer protection statutes and other laws as asserted herein;

    f.    whether Audi's actions violate Illinois consumer protection laws;

    g.    whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

    h.    whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

- 16 -

i.      whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

29.      **Typicality**.  Plaintiff's claims are typical of the claims of the Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiff and each Class Member purchased an Affected Vehicle and were comparably injured through Audi's wrongful conduct as described above.

30.      **Adequacy**.  Plaintiff will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff's interests do not conflict with the interests of the Class Members.  Further, Plaintiff has retained counsel competent and experienced in complex class action litigation, including vehicle defect litigation, and Plaintiff intends to prosecute this action vigorously.  Therefore, the interests of the Class Members will be fairly and adequately protected.

31.      **Predominance of Common Issues**.  A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members.

32.      **Declaratory and Injunctive Relief**.  Federal Rule of Civil Procedure 23(b)(2): Audi has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

33.      **Superiority**.  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to all other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class Members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against a large

- 17 -

corporation such as Audi. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. The Classes are ascertainable and the same common documents and testimony will be used to prove Plaintiff's claims as well as the claims of the Class Members. Finally, proceeding as a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM

## FRAUDULENT CONCEALMENT

## (ON BEHALF OF THE NATIONWIDE CLASS AND ALL SUBCLASSES)

34. Plaintiff incorporates the allegations set forth above as if fully set forth herein.

35. Plaintiff brings this Count on behalf of the Nationwide Class and all Subclasses.

36. Audi concealed the defeat device that changes the shift points of the automatic transmission so that the vehicle operates in a "low rev" mode, that is, it shifts into the next higher gear sooner than it otherwise would, which effectively falsifies the vehicle's emissions and fuel efficiency results by keeping the engine RPM artificially low, thereby using less fuel and emitting less carbon dioxide. Audi also concealed that, when the vehicle is not in a testing bay, the defeat device deactivates and allows the vehicle to operate at higher revolutions per minute such that the vehicle has more power and acceleration, but consumes more fuel and emits more carbon dioxide.

37. Audi made material representations and statements of fact to Plaintiff and the Nationwide Class and the Subclass members that resulted in Plaintiff and the Nationwide Class and the Subclasses reasonably believing the state of affairs to be other than what it actually was,

- 18 -

such as that its Affected Vehicles actually emitted the amount of $CO_2$ as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

38.     Audi executives were aware of this defeat device and instructed that it be utilized as much as possible to misrepresent the performance of the Affected Vehicles.

39.     Audi intended that Plaintiff and the other members of the Nationwide Class and the Subclasses rely on the misrepresentations and omissions described above, so that Plaintiff and other class members would purchase the Affected Vehicles.

40.     The truth about the defeat device and Audi's manipulations of the "low rev" mode was only known to Audi; Plaintiff and the Nationwide Class and Subclass members did not know of these facts, and Audi actively concealed these facts from them.

41.     Audi had a duty to disclose the truth about the defeat device and Audi's "low rev" mode manipulations because Audi (i) possessed exclusive knowledge about the defeat device and the manipulations, and (ii) intentionally concealed the foregoing from Plaintiff and all members of the Nationwide Class and the subclasses.

42.     Plaintiff and all members of the Nationwide Class and the subclasses reasonably relied upon Audi's deception.  They had no way of knowing that Audi's representations were false and/or misleading.  As consumers, Plaintiff and the Class and Subclass members could not unravel Audi's deceptions on their own.  Rather, Audi intended to deceive Plaintiff and the Class and Subclass members by concealing the true facts about the defeat device and Audi's "low rev" mode manipulations.

010642-10 914392 V1

43. Audi's false representations and omissions were material to consumers, because they concerned the exhaust and mileage performance of the Affected Vehicles, as well as the overall performance of the engines in the Affected Vehicles.

44. The foregoing conduct constitutes fraudulent concealment or fraud by concealment under the laws of all of the states and the District of Columbia.

45. Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiff and members of the Nationwide Class and the Subclasses would not have purchased or leased the Affected Vehicles or would have paid less for them.

46. The foregoing acts, omissions and practices proximately caused Plaintiff and the other members of the Nationwide Class and the Subclasses to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to remove the effects of the $CO_2$ Defeat Device without compromising each Affected Vehicle's performance, and excess cost for gasoline expenditures.

47. Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiff and the Nationwide Class and Subclass Members.

48. As a result of this wrongful conduct, Plaintiff and the Nationwide Class and Subclass have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

49. Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

## SECOND CLAIM

## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

## (ON BEHALF OF THE NATIONWIDE CLASS AND ILLINOIS SUBCLASS)

50.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

51.     Plaintiff brings this Count on behalf of the Nationwide Class and the Illinois Subclass.

52.     Plaintiff and the Nationwide Class and Illinois Subclass members are consumers under the Illinois Consumer Fraud Act and Defendant is a "person" within the meaning of 815 Ill. Comp. Stat. 510/1(5).

53.     Audi engaged, and continues to engage, in the wrongful conduct alleged herein in the course of trade and commerce, as defined in 815 ILCS 505/2 and 815 ILCS 510/2.

54.     815 ILCS 505/2 (Illinois Consumer Fraud Act) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

55.     815 ILCS 510/2 provides that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the

following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have...; (7) represents that goods or services are of a particular standard, quality, or grade… if they are not; … [and] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

56.     Audi represented that the Affected Vehicles have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, inter alia, that the Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

57.     Audi provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Affected Vehicles such as that its Affected Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

58.     Audi represented that the Affected Vehicles were of a particular standard, quality, or grade, when they were of another, such as that its Vehicles emitted a certain amount of $CO_2$ per mile and had certain accurately calculated fuel economy numbers which is not the case.

59.     Audi engaged in unconscionable commercial practices in failing to reveal material facts and information about the $CO_2$ Defeat Device, which did, or tended to, mislead Plaintiff and the Nationwide Class and Illinois Subclass about facts that could not reasonably be known by the consumer including but not limited to the fact that the Affected Vehicles emitted

- 22 -

substantially more CO2 and that the stated fuel economy numbers were not accurate and were incorrectly calculated.

60.     Audi failed to reveal facts that were material to the transactions in light of Audi's representations discussed throughout this complaint, such as that its Affected Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

61.     Audi caused Plaintiff and the Nationwide Class and the Illinois Subclass to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct, namely that its Affected Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

62.     Audi deliberately withheld material facts—such as that its Affected Vehicles emitted substantially more CO2 and had substantially lower fuel economy standards—from Plaintiff and the Nationwide Class and Illinois Subclass with the intent that Plaintiff and the Nationwide Class and Illinois Subclass members rely upon the omission.

63.     Audi made material representations and statements of fact to Plaintiff and the Nationwide Class and Illinois Subclass members that resulted in Plaintiff and the Nationwide Class and Illinois Subclass reasonably believing the state of affairs to be other than what it actually was, such as that its Affected Vehicles actually emitted the amount of CO2 as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

64.     Audi intended that Plaintiff and the other members of the Nationwide Class and Illinois Subclass members rely on their misrepresentations and omissions described above, so that Plaintiff and other class members would purchase the Affected Vehicles.

- 23 -

65.     Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiff and other members of the Nationwide Class and Illinois Subclass would not have purchased or leased the Affected Vehicles or would have paid less for them.

66.     The foregoing acts, omissions and practices proximately caused Plaintiff and the other members of the Nationwide Class and Illinois Subclass to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to remove the effects of the $CO_2$ Defeat Device without compromising each Affected Vehicle's performance, and excess cost for gasoline expenditures.

67.     Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiff and the Nationwide Class and Illinois Subclass Members.

68.     As a direct and proximate result of this wrongful conduct, Plaintiff and the Nationwide Class and Illinois Subclass have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

69.     Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

## THIRD CLAIM

## VIOLATIONS OF THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS OF VARIOUS STATES AND THE DISTRICT OF COLUMBIA

## (ON BEHALF OF THE NON-ILLINOIS SUBCLASSES)

70.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

71.     Plaintiff brings this Count on behalf of the subclasses associated with the states identified below.

72.     Audi's conduct described herein constitutes prohibited practices, unfair, deceptive and unconscionable conduct under the unfair and deceptive trade practices acts of 36 states and the District of Columbia, as follows:

a.      Alabama:  The aforementioned practices by Audi were and are in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*;

b.      Alaska:  The aforementioned practices by Audi were and are in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq*.;

c.      Arizona:  The aforementioned practices by Audi were and are in violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*;

d.      Arkansas:  The aforementioned practices by Audi were and are in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq*.;

e.      California:  The aforementioned practices by Audi were and are in violation of the California Unfair and Deceptive Practices Act, Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

f.      Colorado:  The aforementioned practices by Audi were and are in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.;

g.      Connecticut:  The aforementioned practices by Audi were and are in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq*.;

h.      Delaware:  The aforementioned practices by Audi were and are in violation of the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq*.;

- 25 -

i. District of Columbia: The aforementioned practices by Audi were and are in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*;

j. Florida: The aforementioned practices by Audi were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

k. Georgia: The aforementioned practices by Audi were and are in violation of the Georgia Fair Business Practices Act, §10-1-390 *et seq.*;

l. Hawaii: The aforementioned practices by Audi were and are in violation of Hawaii's Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

m. Idaho: The aforementioned practices by Audi were and are in violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

n. Indiana: The aforementioned practices by Audi were and are in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, *et seq.*;

o. Iowa: The aforementioned practices by Audi were and are in violation of the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code § 714h.1, *et seq.*;

p. Kansas: The aforementioned practices by Audi were and are in violation of the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-626, *et seq.*;

q. Kentucky: The aforementioned practices by Audi were and are in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;

r.      Louisiana:  The aforementioned practices by Audi were and are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq*.;

s.      Maine:  The aforementioned practices by Audi were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq*.;

t.      Maryland:  The aforementioned practices by Audi were and are in violation of the Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

u.      Massachusetts:  The aforementioned practices by Audi were and are in violation of the Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq*;

v.      Michigan:  The aforementioned practices by Mercedes were and are in violation of the Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

w.      Minnesota:  The aforementioned practices by Audi were and are in violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

x.      Mississippi:  The aforementioned practices by Audi were and are in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

y.      Missouri:  The aforementioned practices by Audi were and are in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

z.      Montana:  The aforementioned practices by Audi were and are in violation of the Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq*.;

010642-10  914392 V1

aa.     Nebraska:  The aforementioned practices by Audi were and are in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq*., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq*.;

bb.     Nevada:  The aforementioned practices by Audi were and are in violation of the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq*.; New Hampshire:  The aforementioned practices by Mercedes were and are in violation of the New Hampshire Consumer Protection Act,  N.H. Rev. Stat. § 358-A:1, *et seq*.;

cc.     New Hampshire:  The aforementioned practices by Audi were and are in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358-a:1, *et seq.*;

dd.     New Jersey:  The aforementioned practices by Audi were and are in violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*;

ee.     New Mexico:  The aforementioned practices by Audi were and are in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq*.;

ff.     New York:  The aforementioned practices by Audi were and are in violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

gg.     North Carolina:  The aforementioned practices by Audi were and are in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

hh.     North Dakota:  The aforementioned practices by Audi were and are in violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq*.;

ii.     Ohio:  The aforementioned practices by Audi were and are in violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq*.;

jj.     Oklahoma:  The aforementioned practices by Audi were and are in violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

kk.     Oregon:  The aforementioned practices by Audi were and are in violation of the Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ll.     Pennsylvania:  The aforementioned practices by Audi were and are in violation of the Pennsylvania Unfair Trade Practices an Consumer Protection Law, 73 P.S. § 201-1, *et seq.*;

mm.     Rhode Island:  The aforementioned practices by Audi were and are in violation of the Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

nn.     South Carolina:  The aforementioned practices by Audi were and are in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

oo.     South Dakota:  The aforementioned practices by Audi were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

pp.     Tennessee:  The aforementioned practices by Audi were and are in violation of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101, *et seq.*;

qq.     Texas:  The aforementioned practices by Audi were and are in violation of the Texas Deceptive Trade Practices Act—Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*;

rr.     Utah:  The aforementioned practices by Audi were and are in violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*;

ss.     Vermont:  The aforementioned practices by Audi were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

tt.     Virginia:  The aforementioned practices by Audi were and are in violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*;

uu.     Washington:  The aforementioned practices by Audi were and are in violation of the Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

vv.     West Virginia:  The aforementioned practices by Audi were and are in violation of the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

ww.     Wisconsin: The aforementioned practices by Audi were and are in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq*.

xx.     Wyoming:  The aforementioned practices by Audi were and are in violation of the Wyoming Consumer Protection Act, Wyo. Stat. §§ 40-12-101, *et seq.*

73.     Under statutes enacted in these states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff and Subclass members are consumers who purchased Audis' Affected Vehicles pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

74.     Under statues enacted in these states and the District of Columbia to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Audi is a supplier, manufacturer, advertiser, and seller who is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

75.     Audi represented that the Affected Vehicles have sponsorship, approval, characteristics, uses, and benefits that they do not have, including, inter alia, that the Affected

Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

76.     Audi provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Affected Vehicles such as that its Affected Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

77.     Audi represented that the Affected Vehicles were of a particular standard, quality, or grade, when they were of another, such as that its Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

78.     Audi engaged in unconscionable commercial practices in failing to reveal material facts and information about the CO2 Defeat Device, which did, or tended to, mislead Plaintiff and the Subclasses about facts that could not reasonably be known by the consumer including but not limited to the fact that the Affected Vehicles emitted substantially more CO2 and that the stated fuel economy numbers were not accurate and were incorrectly calculated.

79.     Audi failed to reveal facts that were material to the transactions in light of Audi's representations discussed throughout this complaint, such as that its Affected Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

80.     Audi caused Plaintiff and the Subclasses to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct, namely that its Affected Vehicles emitted a certain amount of CO2 per mile and had certain accurately calculated fuel economy numbers which is not the case.

010642-10  914392 V1

81. Audi deliberately withheld material facts—such as that its Affected Vehicles emitted substantially more CO2 and had substantially lower fuel economy standards—from Plaintiff and the Subclasses with the intent that Plaintiff and the Subclass members rely upon the omission.

82. Audi made material representations and statements of fact to Plaintiff and the Subclass members that resulted in Plaintiff and the Subclasses reasonably believing the state of affairs to be other than what it actually was, such as that its Affected Vehicles actually emitted the amount of CO2 as stated on the Monroney sticker and that the Affected Vehicles actually had certain accurately calculated fuel economy standards which is not the case.

83. Audi intended that Plaintiff and the Subclass members rely on their misrepresentations and omissions described above, so that Plaintiff and the Subclass members would purchase the Affected Vehicles.

84. Had Audi disclosed the omitted material or not misrepresented the characteristics of the Affected Vehicles, Plaintiff and other members of the Subclasses would not have purchased or leased the Affected Vehicles or would have paid less for them.

85. The foregoing acts, omissions and practices proximately caused Plaintiff and the members of the Subclasses to suffer actual damages in the form of, inter alia, loss of the benefit of the bargain, diminution of value, the cost to repair each Affected Vehicle's engine to remove the effects of the CO2 Defeat Device without compromising each Affected Vehicle's performance, and excess cost for gasoline expenditures.

86. Audi's conduct was knowing, intentional, and malicious, and demonstrated a complete lack of care and recklessness and was in conscious disregard for the rights of Plaintiff and the Subclass Members.

- 32 -

87.     As a direct and proximate result of this wrongful conduct, Plaintiff and the Subclasses have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, diminution of value, and reasonable attorneys' fees.

88.     Audi's conduct was unfair as offensive to public policy, unscrupulous, unethical and immoral, and caused substantial injury to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Nationwide Class and all Subclasses, prays for judgment as follow:

A.      Certification of the Nationwide Class and the state Subclasses under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Nationwide Class and Subclasses and his counsel as Class counsel;

B.      Compensatory and other damages identified herein;

C.      Awarding restitution and disgorgement of Audi's revenues or profits to Plaintiff and the proposed Nationwide Class and Subclasses as permitted by applicable law;

D.      An Order requiring Audi to cease and desist from engaging in wrongful conduct and to engage in a corrective advertising campaign;

E.      Statutory pre-judgment and post-judgment interest on any amounts;

F.      Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

G.      Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

DATED:  November 8, 2016

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:   _/s/ Steve W. Berman_
     Steve W. Berman
Thomas E. Loeser (*pro hac vice to be filed*)
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
tomloeser@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4960
Facsimile:  (708) 628-4950
beth@hbsslaw.com

Christian A. Jenkins
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, Ohio  45208
Phone:  (513) 723-1600
Fax:  (513) 723-1620
cjenkins@minnillojenkins.com

Jeffrey S. Goldenberg
Todd B. Naylor
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio  45202
Phone:  (513) 345-8291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

*Counsel for Plaintiffs*

- 34 -